UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMON MANUEL ARIAS PENA,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., et al.,<br><br>Respondents. | Case No. 2:26-cv-10618-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On September 17, 2026, petitioner Ramon Manuel Arias Pena ("Petitioner"), represented by counsel, filed a "Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Complaint for Declaratory and Injunctive Relief" ("Petition"). (Docket No. 1). On September 22, 2026, Petitioner filed a Memorandum of Points and Authorities in support of the Petition (Docket No. 8), accompanied by the supporting Declaration of Petitioner ("Petitioner's Decl.") (Docket No. 8-1), the supporting Declaration of Patrick F. Valdez ("Valdez Decl.") (Docket No. 8-2), and six exhibits (Docket Nos. 8-3 through 8-8).

On September 24, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondents filed an Answer to the Petition ("Answer"). (Docket No. 9). In the Answer, Respondents state that the Petition is too speculative to establish unlawful custody because Petitioner is not currently in detention, and he was not physically detained when he filed and sought anticipatory habeas relief against possible re-detention prior to his September 18, 2026 check-in appointment with Immigration Customs Enforcement ("ICE"). (Id. at 2).[1]

On September 25, 2026, Petitioner filed his Reply. (Docket No. 10).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court finds that habeas relief is warranted and therefore grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of El Salvador. (Docket No. 1 at 5; Docket No. 8 at 1; Petitioner's Decl. at ¶ 2). On or about November 1, 1988, Petitioner came to the United States when he was seventeen years old. (Id.). He has lived in Southern California ever since. (Id.). He is the father of four adult children, all United States citizens, and one of whom has sponsored him for permanent residency. (Docket No. 1 at 5; Docket No. 8 at 2; Petitioner's Decl. at ¶ 3; see Docket No. 8-8).

Between 2002 and 2009, Petitioner sustained misdemeanor convictions for spousal battery (2002); driving under the influence (2003, later set aside and dismissed under California Penal Code § 1203.4); driving under the influence (January 2009); and driving on a suspended license (May 2009). (Docket No. 1 at 5; Docket No. 8 at 2; Petitioner's Decl. at ¶ 4). On September 1, 2009, Petitioner

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is drawn primarily from the Petition.

pleaded guilty in Los Angeles County Superior Court No. YA075863 to felony evading a peace officer, Vehicle Code § 2800.2(a), and misdemeanor driving under the influence, both arising from a single incident on August 16, 2009, and he was sentenced to the low term of sixteen months in state prison. (Docket No. 1 at 6; Docket No. 8 at 2; Petitioner's Decl. at ¶ 4). Petitioner served that sentence and was released from state custody in or about November 2010. (Id.). Petitioner sustained a further misdemeanor DUI conviction on January 20, 2016, Los Angeles County Superior Court No. DOW4DY08732, to which he was sentenced to 5 years of probation and 120 days in county jail. (Docket No. 1 at at 5-6).

On an unknown date, Petitioner was arrested by ICE and taken into custody in Adelanto, California. (Id. at 6). On January 12, 2016, Immigration Judge Arlene E. Dorfman, sitting at the Adelanto Immigration Court, ordered Petitioner removed to El Salvador. (Id.; Docket No. 8 at 3; Petitioner's Decl. at ¶ 6; see Docket No. 8-3). In the same order, she denied his other applications for relief and granted deferral of removal under Article III of the Convention Against Torture. (Docket No. 1 at 6; Docket No. 8 at 1; see Docket No. 8-3). No country other than El Salvador is designated in the order. (Docket No. 1 at 6; Docket No. 8 at 1; see Docket No. 8-3). Neither party reserved appeal, and the order became administratively final on the date of the immigration judge's decision. (Docket No. 1 at 6; see Docket No. 8-3). No motion to terminate deferral under 8 C.F.R. § 1208.17(d) has ever been filed. (Docket No. 1 at 6; Docket No. 8 at 3).

On March 13, 2017, then Field Office Director, David A. Marin, released Petitioner on an Order of Supervision ("OSUP"). (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 7; see Docket No. 8-4). Petitioner contends that his convictions were known to Respondents when they made that decision. (Docket No. 1 at 6: Docket No. 8 at 3; Petitioner's Decl. at ¶ 5). The OSUP requires Petitioner to report in person as directed, restricts his travel, requires notice of any change of

address or employment, requires him to assist ICE in obtaining travel documents, and directs him to "obey all local, state and federal laws." (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 7; see Docket No. 8-4).

Petitioner has reported to ICE as directed for nine and a half years, including on March 12, 2018, March 11, 2019, and on March 12, 2026. (Docket No. 1 at 6, 8; Docket No. 8 at 3; Petitioner's Decl. at ¶ 15; see Docket No. 8-4 at 2). He has not been accused of missing any of his appointments with ICE. (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 8). In that time, ICE has never told him that it has identified any country other than El Salvador willing to accept him and has never asked him whether he fears removal to any other country. (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 9). From Petitioner's release in March 2017 until May 24, 2025, he had not been arrested for or convicted of any offense. (Docket No. 1 at 6; Docket No. 8 at 3). He has worked for the same employer, Cal Western in Gardena, California, since July 2022. (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 10). On May 14, 2026, his United States citizen son filed a Form I-130 immediate-relative petition on his behalf, which remains pending with U.S. Citizenship and Immigration Services. (Docket No. 1 at 6-7; see Docket No. 8-8).

On May 24, 2025, the California Highway Patrol cited Petitioner for driving under the influence. (Docket No. 1 at 7; Docket No. 8 at 3; Petitioner's Decl. at ¶ 11). On December 26, 2025, a misdemeanor complaint was filed against Petitioner in Los Angeles County Superior Court, No. 25LBCM04666-01. (Docket No. 1 at 7; Docket No. 8 at 3; Petitioner's Decl. at ¶ 11). On February 13, 2026, the court allowed Petitioner to remain out of custody on his own recognizance, but required Petitioner to wear a SCRAM alcohol-monitoring bracelet. (Docket No. 1 at 7; Docket No. 8 at 3; Petitioner's Decl. at ¶ 11).

On March 19, 2026, Petitioner suffered a misdemeanor driving under the influence conviction pursuant to a plea. (Docket No. 8 at 1-2; Petitioner's Decl. at ¶ 12). The other charges were dismissed, and the court sentenced Petitioner to three years of summary probation and ordered him to complete a three-month alcohol-education program and to pay fines or do community service. (Docket No. 1 at 7; Docket No. 8 at 3; Petitioner's Decl. at ¶ 12). Petitioner has completed the alcohol-education program, has completed the community service, and has not been arrested while on probation. (Docket No. 1 at 7; Petitioner's Decl. at ¶ 13).

On September 18, 2026, Petitioner appeared for his scheduled check-in appointment with ICE, and for the first time was pulled from the kiosk line to meet an officer. (Docket No. 1 at 7; Docket No. 8 at 2-4; Petitioner's Decl. at ¶ 17; Valdez Decl. at ¶¶ 3-4). The officer signaled that he knew about Petitioner's drunk driving arrest, cut Petitioner's reporting interval from six months to two months, gave no reason for the shortened date, and did not say anything about what ICE intends to do when Petitioner returns for his next appointment on November 19, 2026. (Docket No. 8 at 2-4; Petitioner's Decl. at ¶¶ 16, 18; Valdez Decl. at ¶¶ 5-6).

Petitioner intends to appear at his next appointment with ICE on November 19, 2026, but he fears he will be arrested without notice and without any hearing at which he can be heard. (Docket No. 8 at 4; Petitioner's Decl. at ¶ 19).

## III.

## PETITIONER'S CLAIM

The Petition alleges that Petitioner's re-detention without notice and a hearing violates his right to procedural due process under the Fifth Amendment. (Docket No. 1 at 8-9; Docket No. 8 at 6-10).

/ / /

/ / /

/ / /

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## V.

## DISCUSSION

### A. The Court Has Habeas Jurisdiction.

In their brief Opposition, Respondents contend that "[t]he Petition is too speculative to establish unlawful custody" because Petitioner is not currently in custody and was not in custody at the time the Petition was filed. (Docket No. 9 at 2). Respondents argue that the Petition improperly seeks anticipatory relief. (Id.)

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3); see also Sun v. Santacruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL

2730235, at *3 (C.D. Cal. Aug. 26, 2025). The Supreme Court has "very liberally construed the 'in custody' requirement[.]" Maleng v. Cook, 490 U.S. 488, 492 (1989). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" Ortega v. Bonnar, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting Jones v. Cunningham, 371 U.S. 236, 240, (1963)); see also Preiser, 411 U.S. at 487 ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but . . . the writ is available as well to attack future confinement and obtain future releases.").

Here, the Court finds that Petitioner satisfies the "in custody" requirement within the meaning of § 2241 because he is subject to several "restraints not shared by the public generally[.]" Jones, 371 U.S. at 240. Petitioner was released from ICE custody pursuant to an OSUP (Form I-220B), which requires him to report in-person with ICE as directed, restricts his travel, requires him to assist ICE in obtaining travel documents, requires him to notify ICE of any change of address, and requires him to "obey all local, state and federal laws." (Docket No. 1 at 6; Docket No. 8 at 3; Petitioner's Decl. at ¶ 7; see Docket No. 8-4). A violation of any of the conditions of Petitioner's release can result in Petitioner being taken into physical custody by ICE. (Docker No. 8 at 8). Petitioner's freedom is "significantly confine[d] and restrain[ed]" and he, therefore, is in custody for the purpose of federal habeas corpus jurisdiction. See Jones, 371 U.S. at 243.

Petitioner "need not seek immediate release of that custody for habeas corpus relief to be available." Sun, 2025 WL 2730235, at *3 (citing Preiser, 411 U.S. at 487 and Rose v. Morris, 619 F.2d 42, 43 (9th Cir. 1980)). "Rather, given h[is] present custodial arrangement, []he may also bring a habeas challenge to 'attack [his] future confinement' by ICE." Id. (quoting Preiser, 411 U.S. at 487). A Petitioner can make such a challenge when he challenges his "future unlawful re-detention for

the purposes of removal, in part on the grounds that ICE has refused to provide any assurances that it will not re-detain [Petitioner] at [his upcoming] check-in appointment." Id.

Here, even though Petitioner was not detained at his September 18, 2026 appointment with ICE (see Docket No. 8 at 2; Petitioner's Decl. at ¶ 18; Valdez Decl. at ¶ 5;Docket No. 9 at 2), Petitioner was required to report again in two months instead of six, and must now report to ICE on November 19, 2026 (Docket No. 8 at 2, 4; Petitioner's Decl. at ¶ 18; Valdez Decl. at ¶ 6). Respondents have said nothing about what ICE intends to do when Petitioner reports at his upcoming scheduled ICE appointment. (Docket No. 8 at 2; Petitioner's Decl. at ¶ 18; Valdez Decl. at ¶ 6). In light of the fact that Petitioner's release on the conditions of his OSUP makes him subject to several restraints to which the general public is not, and with a scheduled upcoming ICE appointment, the Petition challenges Petitioner's "future unlawful re-detention for the purposes of removal, in part on the grounds that ICE has refused to provide any assurances that it will not re-detain h[im] at h[is upcoming] check-in appointment." Sun, 2025 WL 2730235, at *3.

Accordingly, the Court finds that Petitioner is "in custody" within the meaning of 28 U.S.C. § 2241 and that the Petition is ripe for consideration. See, e.g., id. (finding the petitioner in custody for the purposes of federal habeas corpus jurisdiction where conditions of release "significantly confine[d] and restrain[ed] [the petitioner's] freedom"); Harrington v. Albarran, Case No. 26-cv-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) (same); Sanchez v. Santacruz, Case No. 2:26-cv26-05063-FMO-KES, 2026 WL 1915710, at *3 (C.D. Cal. June 29, 2026) (same); Ayala v. Albarran, Case No. 5:26-cv-03092-BLF, 2026 WL 1179862, at *3 (N.D. Cal. Apr. 30, 2026) (rejecting respondents' jurisdiction argument in light of "their own pattern of escalating measures taken with respect to

[petitioner], including their repeated refusal to provide assurances that he will not be detained").

**B. Petitioner's Due Process Claim.**

Petitioner contends that he was released from ICE custody on an OSUP in March 2017, and has lived "at liberty" thereunder since that time. (Docket No. 1 at 8). He argues that the Due Process Clause prohibits Respondents from re-detaining him without notice and a pre-deprivation hearing. (Id. at 9; Docket No. 8 at 6-10). In their Answer, Respondents argue only that Petitioner's claim is unripe because he is not "in custody." (Docket No. 9 at 2). Respondents do not otherwise address the merits of Petitioner's procedural due process claim in their Answer. (See, generally, Docket No. 9)

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to noncitizens in the United States. See Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law[.]"); Trump v. J. G. G., 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation modified).

Given Respondents' failure to address the merits of Petitioner's due process claim, the Court finds that Respondents have conceded that the claim is meritorious. See Singh v. Chiang, Case No. 25-cv-03024 FMO-SP, 2025 WL 4058328, at *4

(C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).

1. Relevant Legal Authority.

ICE may revoke release when a noncitizen violates a condition of his or her OSUP. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1). When ICE revokes an OSUP, ICE is required to provide (1) notice of the reasons for revocation, and (2) an "informal interview promptly after his or return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). ICE also may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

"It is a well-known maxim that agencies must comply with their own regulations." United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010); see also Delkash v. Noem, Case No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) ("It is well-established that government agencies are required to follow their own regulations.") (citing United States ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)). "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" Gutierrez v. Noem, Case No. 5:25-cv-02668-DOC-RAO, 2025 WL 3247769, at *4 (C.D. Cal. Oct. 31, 2025) (citation omitted); see also Delkash, 2025 WL 2683988, at *5 ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the redetention unlawful. . . . These procedures are not optional or discretionary;

they must be followed, and failure to do so renders the detention unlawful.") (internal citations omitted).

Here, in light of the allegations of the Petition and Respondents' concession to the merits thereof, the Court finds Petitioner is entitled to the relief he seeks. The Petition is granted, and Respondents are prohibited from revoking Petitioner's OSUP and re-detaining him without first providing him the process he is due, including prior written notice and a hearing before a neutral arbiter.

## VI.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered: (1) Granting the Petition; and (2) enjoining and restraining Respondents from arresting, detaining or removing Petitioner Ramon Manuel Arias Pena (A# 070-184-589) unless Respondents comply with due process protections and applicable laws and regulations required to revoke his release under his OSUP, including providing him with adequate written notice and a hearing.

Respondents, their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with Respondents are permanently enjoined and restrained from: (a) re-arresting or detaining Petitioner without prior written notice to Petitioner and his counsel, and a pre-deprivation hearing before a neutral arbiter to evaluate whether Petitioner's re-detention is warranted based on flight risk or a danger to the community; and (b) removing Petitioner to a third country unless they adhere to the following procedures:

i. provide Petitioner and his counsel with written notice in a language Petitioner can understand;

ii. provide a meaningful opportunity, and a minimum of ten (10) days, to raise a fear-based claim for protection prior to removal;

iii. if Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings; and

iv. if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.

DATED: October 2, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE